**IN THE COURT OF APPEALS OF IOWA**

No. 15-1522
Filed March 23, 2016

**IN THE INTEREST OF S.J.,**
**Minor Child,**

**S.R., Mother,**
Appellant,

**N.J., Father,**
Appellant.
_____

Appeal from the Iowa District Court for Iowa County, Susan Flaherty, Associate Juvenile Judge.

A mother and father separately appeal termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Robert W. Davison, Cedar Rapids, for appellant mother.

Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd and Janet L. Hoffman, Assistant Attorneys General, for appellee State.

Lorraine Machacek, Cedar Rapids, for minor child.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

The mother and father separately appeal the termination of their parental rights to their child, S.J. They claim the State failed to prove the statutory grounds for termination, they should be granted additional time to work toward reunification, and termination is not in the child's best interests because their bond with the child is strong. We affirm the juvenile court's order.

We review termination-of-parental-rights proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The three-step statutory framework governing the termination of parental rights is well established and need not be repeated here. *See In re P.L.*, 778 N.W.2d 33, 40-41 (Iowa 2010). The juvenile court issued a lengthy, fact-intensive, thorough, and well-reasoned ruling terminating the mother's and the father's parental rights. After carefully reviewing the record and the briefs of the parties, we adopt as our own the findings and conclusions set forth in the juvenile court's order.

The mother and the father have maintained a relationship since 2004 and have a long history of substance abuse, domestic violence, mental-health issues, and housing instability. Their first child was born in 2005 and tested positive for cocaine at birth; the child was removed from the parents' custody, and their parental rights to this child were later terminated. The same scenario followed the birth of their second child in 2007 and their third child in 2012.

When S.J. was born in 2014, the parents were homeless and living in a tent underneath an interstate overpass. S.J. was removed from their custody and placed in family foster care. The parents obtained temporary housing through a transitional program that assists homeless individuals, and they

maintained that housing throughout the case. S.J. has never lived with the parents, and there have been no trial home placements or extended visitation. Neither parent moved past fully-supervised visits.

The juvenile court terminated the mother's and the father's parental rights pursuant to Iowa Code section 232.116(1)(g) and (h) (2015). When the juvenile court terminates parental rights on more than one ground, we may affirm the order on any ground we find supported by clear and convincing evidence in the record. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We choose to address the ground for termination under section 232.116(1)(h), which provides

> termination may be ordered when there is clear and convincing evidence that a child under the age of three who has been adjudicated [a child in need of assistance] and removed from the parents' care for at least the last six consecutive months cannot be returned to the parents' custody at the time of the termination hearing.

*Id.*

The first three elements of paragraph (h) are not in dispute; rather, the parents' claims on appeal implicate the fourth element. *See* Iowa Code § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time."). But there is a fatal flaw to their arguments that the State failed to prove the child could not be returned to their custody. Here, both the mother and father ask that an additional period of rehabilitation be granted "to allow the parents to prove they can parent [the child]" and "are capable of caring for their [child]." They assert that given a few more months, they could "prove that they can more than adequately care for the child and keep [the child] safe." This request for more

time is certainly a tacit, if not explicit, admission that their child could not be returned to their custody at the time of the termination hearing. In any event, the juvenile court concluded:

> Services have been offered to assist [the parents] in regaining custody of [the child]. These services have included parenting instruction, substance-abuse evaluations, substance-abuse treatment, drug testing, mental-health treatment, supervised visitation, assistance with housing, and domestic violence counseling. These same services have been offered to [the parents] since 2005, when [their first child] was born, and throughout the ten years since. [The parents] have made some improvements in the past year, particularly in maintaining their status at [the transitional housing program], [the mother]'s follow through with her mental health medication, and their efforts at improving parenting ability. However, there continue to be ongoing, serious risks as a result of parental substance abuse, [the father]'s behavior and resistance to accepting parenting information, and the undemonstrated ability to maintain a safe home when their eligibility for transitional housing ends. The improvements made have not risen to the level that would support a finding that a child would be safe in their care on more than a short term, supervised basis. Clearly, [the child] would continue to be a child in need of assistance if returned to the care of her parents.

Having reviewed the record de novo, we agree. The State proved by clear and convincing evidence that grounds for termination exist under section 232.116(1)(h).

On appeal, the parents request an additional period of rehabilitation, asserting the child would suffer no ill effects if they were given "a few more months" to prove that they can safely provide and care for the child. These parents have been offered and have received services since 2005, and although they recently made some improvement, some of the same concerns that existed in 2005 exist today. Both the mother and the father tested positive for cocaine in April 2015—just two months before the termination-of-parental-rights hearing.

Their housing arrangement was temporary, and no extension had been granted at the time of the hearing. Additionally, the father's behaviors raised serious concerns about the parents' ability to maintain suitable housing in the long run.

As we have stated numerous times, children are not equipped with pause buttons. *See In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."). "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing then Iowa Code section 232.116(1)(e)). Consequently, "[t]ime is a critical element," and parents simply "cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. At some point, as is the case here, "the rights and needs of the [child] must rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification. *See C.B.*, 611 N.W.2d at 494-95.

The parents have been given more than ample time to address their issues and demonstrate they could provide a safe, stable, drug-free home for the child. They have not been able to do so. The juvenile court concluded the parents

> both have lengthy histor[ies] of substance abuse. Throughout the year that [the child] has been living in family-foster care, they have not established a sufficient period of sobriety to demonstrate that they are likely to maintain sobriety. They continue to be at risk of being without housing. They continue to require support regarding parenting and assuring the safety and welfare of a child in their care. [The child] has never lived with [the] parents and . . . cannot be safely returned to them in the reasonably near future.

We agree any additional time in limbo would not be in the child's best interests.

The parents also argue that termination is not in the best interests of the child due to the bond between the child and the parents. While the record discloses a bond between the child and the parents, the record indicates termination is in the child's best interests. The child is in need of a permanent placement and parents who can provide for the child's health, safety, and welfare as the child grows to adulthood. The parents have not demonstrated an ability to do that. As the juvenile court stated, the child's

> need for permanency, security, safety, physical, emotional, and intellectual health dictate that it is in [the child's] best interests to have parental rights terminated and that [the child] be placed for adoption rather than wait any longer for a parent to be ready to resume full time responsibility for [the child's] care.

For the same reasons, we conclude that terminating the parents' parental rights would be less detrimental to the child than the harm that would be caused by continuing the parent-child relationship. *See* Iowa Code § 232.116(3)(c) (permitting the juvenile court to eschew termination of parental rights if it finds

there is clear and convincing evidence the termination would be detrimental to the child due to the closeness of the parent-child relationship).

After reviewing all the evidence, we agree with the juvenile court that the State proved by clear and convincing evidence that grounds for termination exist under section 232.116(1)(h), termination of the parents' parental rights is in the child's best interests, and none of the mitigating factors in section 232.116(3) apply to overcome that determination. Accordingly, we affirm the juvenile court's order terminating both the mother's and the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**